**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JALEN EMPSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jalen Empson ("Plaintiff), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Complaint against Defendant Delta Air Lines, Inc., ("Delta" or "Defendant"), and alleges the following:

## INTRODUCTION

1. Delta is one of the world's largest airlines. In 2019, it was the largest passenger air carrier in the world based on total revenue.

2. Delta typically operates over 5,400 daily flights and serves 325 destinations in over fifty countries.

3. At the end of 2022/early 2023, Delta's CEO publicly stated that Delta was actively pushing bookings to over 100% of capacity in order to ensure to the extent possible that all flights fly full. Accordingly, thousands of passengers with confirmed tickets, like Plaintiff, were involuntarily denied boarding.

4. Under the terms of Delta's uniform contracts with its customers, when the airline denies boarding to passengers with confirmed tickets who do not voluntarily agree to be denied boarding, (*i.e.* those who are involuntarily denied boarding), Delta must compensate the passengers. Passengers like Plaintiff are known as "involuntarily denied boarding" ("IDB"). Under

1

applicable laws and rules and Delta's own contracts of carriage, Delta <u>must</u> compensate the IDB according to a statutory schedule of compensation levels. Delta has denied Plaintiff's claim for IDB compensation, thus breached its contract with Plaintiff and violated applicable law by refusing to pay the statutorily required "denied boarding compensation" ("DBC").

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Jalen Empson is a United States Citizen who temporarily resides in Lisbon, Portugal.

6. Defendant Delta Air Lines, Inc. is a Delaware corporation with its principal place of business located at 1030 Delta Blvd., Atlanta, Georgia and a major New York office 125 West 55th Street, 2nd Floor, New York, New York 10019. "JFK" is a "hub" for Delta, it has 47 gates there and 37 gates at LaGuardia airport in Queens.

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Delta maintains substantial operations in this District. In addition, a substantial part of the events giving rise to the claims asserted herein occurred at JFK.

## SUBSTANTIVE ALLEGATIONS

A.  **The Plaintiff**

9. Plaintiff Jalen Empson is and was an adult at the time of his flights with a confirmed ticket on Delta Flight 273 leaving Lisbon on February 9, 2023. Plaintiff boarded that flight and arrived at JFK on February 10, 2023.

10. Plaintiff had a round trip ticket with a departure date of February 16, 2023.

11. His departure ticket was also confirmed.

12. Plaintiff was checked in and arrived at JFK several hours before his departure time for flight 273.

13. Plaintiff was involuntarily denied boarding for flight 273 and was rebooked on a flight which departed February 18, 2023.

14. Plaintiff was not offered DBC.

15. Plaintiff was not advised of Delta's Contract of Carriage, or boarding terms and conditions nor did he see any posted notice of his statutory and/or contractual rights to DBC.

16. After Plaintiff's arrival in Lisbon on his Delta flight, a claim for DBC was initiated for Plaintiff but denied by Delta.

17. According to published reports, Delta has been committed to a practice of overbooking by as much as 5%. Its CEO admitted it in a conference call with stock market analysts to discuss Delta's 2023 first quarter earnings.

18. Not so coincidentally, it was reported in July 2023, that Delta had the highest number of overbookings, 29,893, from January to March of 2023.

B.  **Delta's Contracts And Applicable Regulations**

19.  Delta's Contract of Carriage applies to all tickets "for travel on Delta." There is a Contract of Carriage applies for international flights, ("Int'l C of C") *see* **Delta International Contract of Carriage, attached as Exhibit A,** and another applies for domestic flights within the United States, ("Domestic C of C") *see* **Delta Domestic Contract of Carriage, attached as Exhibit B.** Delta drafted both the International and Domestic Contracts of Carriage (together, the "Contracts"). The terms of both Contracts, as relevant here, are materially the same.

20.  Delta offers passengers a "contract of carriage" ("C of C") which states at the outset:

> When you buy a ticket for travel on Delta you enter into a contract with us.

21.  The C of C "applies to travel on any itinerary for International travel and states the terms upon which Delta offers transports to passengers."

22.  The C of C is within a document titled "Delta International General Rules Tarriff."

23.  In addition to applying to all flights operated by Delta, the Contracts also apply to flights operated by carriers operating under the name Delta Connection or Delta Shuttle, and to codeshare flights where Delta markets the flights of another carrier pursuant to a codeshare agreement.

24.  Delta is required to establish boarding priority rules detailing the factors they consider when selecting passengers to be denied boarding involuntarily. 14 C.F.R. § 250.3.

25.  Delta is required to compensate certain passengers who are denied boarding involuntarily. 14 C.F.R. § 250.5.

4

26. Defendant also violated 14 C.F.R. 250 "Oversales" at 250.9 by failing to provide Plaintiff with the required "written explanation" of DBC and 250.11 by failing to make "Public Disclosure of deliberate overbooking and compliance procedures."

27. Delta was required to provide a written statement to Plaintiff explaining the terms, conditions and limitations of the involuntary denied boarding compensation as well as its boarding priority rules and criteria at the airport to any passenger upon request. 14 C.F.R. § 250.9.

28. Only passengers who willingly accept the airlines offer of compensation in exchange for relinquishing a confirmed seat are considered to have been voluntarily denied boarding.

29. Any passenger who does not voluntarily accept online compensation, is an IDB passenger.

30. Rule 21 of the Int'l C of C provides: "Denied Boarding Compensation." It states in relevant part:

> A. Overbooking of Flights
>
> Delta may deny boarding to passengers with confirmed reservations a set forth in this rule.

31. a. Rule 21E of the Int'l C of C provides: "Compensation For Involuntarily Denied Boarding" and states in part:

> When a passenger with a confirmed reservation is involuntarily denied boarding on an oversold flight pursuant to this rule, Delta's sole liability to the passenger shall be to provide alternative transportation . . . <u>and</u> to pay denied boarding compensation . . . pursuant to the terms and conditions of this rule.

b. Rule 21E) 1) a) – d) provides the <u>exceptions</u> to payment of DBC. By implication and logical constitution of the C of C, anything not excluded is entitled to DBC.

32. Delta, like other airlines, is required to compensate involuntarily denied boarding passengers immediately after the denial.

33. Plaintiff was denied boarding involuntarily and could not be scheduled for an alternate flight until 24 hours later.

34. Plaintiff was entitled to DBC.

35. Due demand was made for DBC which Delta denied.

36. Under the C of C, Delta promises to pay DBC in the amount of 400% of the fare including surcharges of air transport taxes to passenger's final destination not to exceed $1,350.00.

37. Plaintiff's final destination was Lisbon, Portugal from JFK, with no stopover.

38. Delta's Domestic General Rules Tariff contain a C of C substantially identical to the international C of C with a substantially identical provision ("Rule 20") for "Denied Boarding Compensation."

39. Both the international and domestic contract of carriage have "governing law" provisions (Rule 26 and Rule 25, respectively) which make applicable to all passengers the laws of the United States of America and, except to the extent not preempted by Federal law, the laws of Georgia without regard to conflict of law principles.

## CLASS ACTION ALLEGATIONS

40. Pursuant to Rule 23, Plaintiff brings his claims as a class action under Fed. R. Civ. P. 23(a) and (b)(3), on behalf of himself and all others similarly situated. and Plaintiff seeks certification of the following nationwide Class:

> All persons with confirmed tickets for travel on a Delta Air Lines, Delta Connection, or Delta Shuttle flight scheduled to operate from December 15, 2017 through the date of a class certification order, who were IDB passengers and who were not paid DBC ("Class" or "Proposed Class").

41. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers and directors. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

42. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

43. The Class meet the criteria for certification under Rule 23(a) and (b)(3) and (c)(4).

44. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(l), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. The exact number of class members is unknown to Plaintiff at this time but may be ascertained through Defendant's records. Based on the large number of overbookings by Defendant, and the reported number of DCC during the Class Period, the Class likely comprises tens of thousands of members geographically dispersed throughout the United States and overseas. Affected passenger's names and addresses are available from Defendant's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

45. **Commonality and Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s commonality and predominance requirements, Plaintiff states that this action involves common questions of law and fact that predominate over any questions affecting individual class members. Delta entered into uniform

Contracts of Carriage with customers, and Delta breached those contracts pursuant to uniform policies applicable to IVB passengers:

  a. Whether Defendant's conduct breaches its Contracts of Carriage; and

  d. Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant.

46. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and members of the Class were subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members is the same for all members of the Class.

47. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

48. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3) a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be

impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT

### BREACH OF CONTRACT
**(brought by Plaintiff on behalf of himself and the Proposed Class)**

49. Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 48 above as if fully set forth herein.

50. This claim for breach of contract damages is based on Delta's breaches of its Contracts.

51. Plaintiff, along with all putative class members, entered into the Contracts with Delta for the provision of air travel in exchange for payment. These Contracts were drafted by Delta.

52. Plaintiff, and all putative members of the Class performed under the Contracts, specifically, by having confirmed tickets on Delta flights or flights marketed by Delta and operated by its codeshare partners, and by complying with all conditions precedent under the Contracts.

53. Due to Delta's denial of boarding, Plaintiff and all putative class members were forced to seek other alternatives for transportation.

54. Under the terms of the Contracts of Carriage drafted by Delta, Plaintiff and putative class members are entitled to DBC.

55. As a result of Delta's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial, including DBC and/or the interest that

accrued during any periods during which DBC were wrongfully delayed, denied, and withheld from Plaintiff and putative class members.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A. For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

B. For himself and each Class member their actual compensatory damages;

E. For reasonable attorneys' fees and costs of suit;

F. For pre-judgment interest; and

G. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 15, 2023          Respectfully submitted,

By: */s/ Lee Squitieri*
       Lee Squitieri
SQUITIERI & FEARON, LLP
305 Broadway
7th Floor
New York, New York 10007
(212) 421-6492